United States District Court
Southern District of Texas
**ENTERED**
July 31, 2026
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **GEORGE ATALA,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 4:25-cv-5708** |
| | § | |
| **ON DECK CAPITAL, INC., ODK CAPITAL LLC, ENOVA INTERNATIONAL INC., HEADWAY CAPITAL LLC, DAVID FISHER, SEAN RAHILLY, CATHLEEN PUGH, CAPTAIN CAPITAL GROUP, LLC, DOES 1–20** | § § § § § § § § | |
| | § | |
| **Defendants.** | § | |

## <u>MEMORANDUM AND RECOMMENDATION</u>

Pending before the Court is Defendants On Deck Capital, Inc. ("OnDeck"), ODK Capital, LLC, Enova International, Inc. ("Enova"), Headway Capital, LLC, David Fisher, Sean Rahilly, and Cathleen Pugh's (collectively, the "Enova Defendants") Motion to Compel Arbitration and Stay Action, or Alternatively, to Transfer Venue (ECF No. 38), Plaintiff George Atala's ("Plaintiff") Motion for Judicial Notice (ECF No. 42), and Enova Defendants' Motion to Strike Plaintiff's Motion for Judicial Notice (ECF No. 43).[1] Based on

[1] This case was referred to the Undersigned for all purposes pursuant to 28 U.S.C. § 636(b)(1)(A) and (B) and Federal Rule of Civil Procedure 72. (ECF No. 13).

a review of the motions, arguments, and relevant law, the Court **RECOMMENDS** Enova's Motion to Compel Arbitration and Stay Action, or Alternatively, to Transfer Venue (ECF No. 38) be **GRANTED**, Plaintiff's Motion for Judicial Notice (ECF No. 42) be **DENIED AS MOOT**, and Enova's Motion to Strike Plaintiff's Motion for Judicial Notice (ECF No. 43) be **DENIED AS MOOT**.

## I. Background

### A. The Complaint

On November 26, 2025, *pro se* Plaintiff filed a 101-page Complaint against Captain Capital Group LLC ("Captain"), OnDeck, ODK Capital, LLC, Enova, Headway Capital, LLC, David Fisher, Sean Rahilly, Cathleen Pugh, and Doe Defendants 1–20 (collectively, "Defendants"), raising various federal and state law claims for alleged unlawful lending and collection practices. (*See* ECF No. 1). Although difficult to follow, the Court construes the allegations and claims as follows.

On October 24, 2022, Plaintiff entered into a loan contract (the "Loan Contract") with Enova and OnDeck for $150,000. (*Id.* at 2, 7, 24). Only $146,250 was disbursed to Plaintiff after an origination fee of $3,750, and the Loan Contract disclosed an annual percentage rate of about 63%, required weekly ACH debits of about $3,800, and required total repayment of about $198,000. (*Id.* at 24). The interest paid on the loan was about 38% which

Plaintiff states is more than double the maximum allowed under Texas law. (*Id.*). In the contract, Plaintiff claims Defendants misrepresented that the Loan originated in Utah and claims Defendants manufactured a basis for litigating any contract disputes in Utah. (*Id.* at 12–14). Plaintiff paid off the loan in full and asserts he suffered financial harm because of Defendants' usurious interest rate, unlawful fees, deceptive practices, fraudulent inducement, and illegal business structure.[2] (*Id.* at 4–7, 11, 25). David Fisher is the President of Enova, Cathleen Pugh is a Custodian of Records for ODK Capital and OnDeck, and Sean Rahilly is General Counsel for Enova. (*Id.* at 9–10, 42–43, 46–47).

Based on these allegations, Plaintiff asserts the following claims: Texas Usury (Count 1); Common Law Fraud and Fraudulent Inducement (Count II); Texas Deceptive Trade Practices Act (Count III); Civil RICO (Count IV); RICO Conspiracy (Count V); Negligence, Negligent Data Handling, and Privacy Breach (Count VI); Criminal Usury (Count VII); Texas Theft Liability Act (Count VIII); Fraudulent Transfer (Count IX); Negligent Misrepresentation

[2] After Plaintiff paid off the loan in October 2023, he entered into a business line of credit contract with Defendants in November 2023; however, Plaintiff does not assert any claims arising from this separate contract. (ECF No. 1 at 26).

(Count X); and Declaratory Judgment (Count XI). (*Id.* at 29–88).[3]

For relief, Plaintiff seeks economic damages, statutory damages, consequential and incidental damages, damages for emotional distress, punitive damages, attorneys' fees, costs, and declaratory relief. (*Id.* at 94–100). Plaintiff has attached to his Complaint a portion of the Loan Contract.[4] (*See* ECF No. 1-1).

**B. The Loan Contract and Arbitration Provision**

In the Loan Contract, Sonata Construction, LLC is the Borrower, Plaintiff is the sole Guarantor, and ODK Capital, LLC is the Lender.[5] (*Id.* at 2, 19). The Loan Contract contains an Arbitration clause at section 33 (the "Arbitration Provision"), which provides: "The parties agree that at the election of any party, all claims between borrower, guarantors, and lender shall be resolved through mandatory binding individual arbitration pursuant to this section." (*Id.* at 12). The subsections provide, in part, as follows:

---

[3] Plaintiff also invokes federal question jurisdiction under 28 U.S.C. § 1331 because "Plaintiff asserts claims under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–1968, including violations of [sections] 1962(c) and 1962(d)," as well as supplemental jurisdiction over his related state-law claims "because those claims arise from the same nucleus of operative facts as the federal RICO claims." (ECF No. 1 at 11).

[4] The attached exhibit is titled, "Business Loan and Security Agreement Supplement" and states, "This Business Loan and Security Agreement Supplement is part of (and incorporated by reference into) the Business Loan and Security Agreement." (ECF No. 1-1 at 2).

[5] The Loan terms and details are the same as recited by Plaintiff in his Complaint. (ECF No. 1-1 at 2). Additionally, the weekly payment amount of approximately $3,800 was to be paid over 52 weeks, for a total loan term of 12 months. (*Id.* at 2–3).

> (A) [U]nder this arbitration agreement, Borrower, Guarantor, or Lender will not have the right to (i) have a court or jury decide the claim being arbitrated, (ii) engage in pre-arbitration discovery to the same extent that Borrower, Guarantor, or Lender could in court . . . .
>
> (B) The term "Claims" is to be given the broadest possible meaning, and includes without limitation Claims arising from or relating to (i) this Agreement, including without limitation, the terms, constructions, interpretation, performance, termination, breach, or enforceability of this Agreement, (ii) any transactions effected pursuant to this Agreement, (iii) terms of or change or addition of terms to this Agreement, (iv) collection or enforcement of any obligation arising from this Agreement, (v) advertisements, promotions, or oral or written statements relating to this Agreement or any transactions between us pursuant to this Agreement, (vi) Claims between Borrower and Guarantor and Lender or Lender's parent corporations, wholly or majority owned subsidiaries, affiliates, predecessors, successors, assigns, agents, independent contractors, employees, officers, directors or representatives arising from any transaction between us pursuant to this Agreement, and (vii) Claims regarding the validity, enforceability, or scope of this Arbitration section or this Agreement, including but not limited to whether a given claim or dispute is subject to arbitration.
>
> . . .
>
> (G) If Borrower, Guarantor, or Lender files a Claim in court, such action is not deemed to be a waiver of the right to compel arbitration of any counterclaims, cross-claims, or separate claims that may be asserted against it. In such a case, upon the election of any party, the entire dispute shall be resolved in arbitration pursuant to the provisions of this section.
>
> (H) This arbitration section is governed by the Federal Arbitration Act, 9 U.S.C. §§ 1–16, other applicable federal law, and to the extent it is applicable, by Utah law.

(*Id.* at 12–13). The Loan Contract also includes a forum-selection clause at section 32, which provides: "Borrower, Guarantors and Lender agree that any action . . . arising out of this Agreement may be brought in any court of the

State of Utah or in the United States District Court for the District of Utah . . . . Borrower and Guarantors and Lender agree that venue is proper in such courts." (*Id.* at 12).

Section 41 states the Agreement and any related disputes are governed by applicable federal law and Utah law.[6] (*Id.* at 15). Plaintiff also signed the "Signature Page," which states:

> I hereby, as a duly authorized agent of Borrower, and in my individual and personal capacity as Guarantor, affirm that I have read and understand the terms and conditions of, consent to, and agree to be bound by, the Business Loan and Security Agreement (inclusive of the Guaranty therein), the accompanying Business Loan and Security Agreement Supplement, and the accompanying Authorization Agreement for Direct Deposit (ACH Credits) and Direct Payments (ACH Debits).

(*Id.* at 19).

**C. Procedural History**

After Plaintiff filed his Complaint, Captain filed a motion to dismiss for insufficient service of process on December 23, 2025. (ECF Nos. 29–31). On February 4, 2026, the Enova Defendants filed the instant Motion to Compel Arbitration and Stay Action, or Alternatively, to Transfer Venue (to the United States District Court for the District of Utah). (ECF No. 38). Plaintiff filed a

---

[6] Section 41 specifically provides the "Agreement and any claim, dispute, or controversy (whether in contract, tort, or otherwise) at any time arising from or relating to this Agreement is governed by, and this Agreement will be construed in accordance with, applicable federal law and (to the extent not preempted by federal law) Utah law without regard to internal principles of conflict of laws." (ECF No. 1-1 at 15).

response in opposition to the Enova Defendants' motion (ECF No. 40), and the Enova Defendants filed a Reply (ECF No. 41).

On February 18, 2026, Plaintiff filed the instant Motion for Judicial Notice, asking the Court to take judicial notice of state court records from litigation in North Carolina between ODK Capital and the Renfrow Group corporation over a similar loan agreement, as support for his opposition to arbitration, because therein purportedly lies similar contract-formation issues that supersede arbitrability. (ECF No. 42). The Enova Defendants then filed the instant Motion to Strike Plaintiff's Motion for Judicial Notice, arguing Plaintiff's filing is effectively a sur-reply without leave-of-court, an improper request for judicial notice of legal determinations rather than adjudicative facts, and nonetheless irrelevant to the motion to compel. (ECF No. 43).

On June 5, 2026, the Court entered a Memorandum and Recommendation, recommending Captain's motion to dismiss be denied and Plaintiff be given an opportunity to cure any defect in service. (ECF No. 45). Plaintiff later served Captain on June 11, 2026. (ECF No. 46). On June 26, 2026, the District Judge adopted the Court's June 5 Memorandum and Recommendation. (ECF No. 47). At the Court's direction, Captain filed a letter informing the Court that it joins the Enova Defendants' Motion to Compel Arbitration. (ECF No. 48). In the letter, Captain states the Arbitration Provision applies to Captain "as an independent contractor of certain Enova

entities, including ODK Capital, LLC." (*Id.* at 1).[7] The pending matters are therefore ripe for disposition.

## II. Legal Standard for the Federal Arbitration Act

Title 9 U.S.C. § 2 of the Federal Arbitration Act ("FAA") governs the validity, irrevocability, and enforcement of agreements to arbitrate. It provides:

> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract . . . .

9 U.S.C. § 2.

Under section 3, if any suit or proceeding is brought in federal court based on "any issue referable to arbitration under an agreement in writing for such arbitration," "the court . . . upon being satisfied that the issue involved . . . is referable to arbitration . . . shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. "A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement

[7] Plaintiff filed a response to Captain's letter, reiterating his opposition to arbitration. (ECF No. 49).

for arbitration may petition . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4.

Courts must "rigorously enforce agreements to arbitrate." *Marsh v. First USA Bank, N.A.*, 103 F. Supp. 2d 909, 914 (N.D. Tex. 2000) (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985)). "The FAA requires that an arbitration agreement, as any other contractual provision, be enforced by the courts according to its terms, if it is otherwise valid under general principles of contract law." *Id.* (citing *Volt Info. Scis., Inc. v. Bd. of Trustees*, 489 U.S. 468, 478 (1989)). "[W]hen a court undertakes the interpretation of an arbitration provision covered by the FAA, 'due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration.'" *Id.* (citation omitted).

"When considering a motion to compel arbitration, the court must determine: (1) whether a valid agreement to arbitrate exists between the parties, and (2) whether the dispute at issue falls within the scope of that agreement." *Grant v. Houser*, 469 F. App'x 310, 314 (5th Cir. 2012). "While ordinarily both steps are questions for the court, the parties can enter into an arbitration agreement that delegates to the arbitrator the power to decide whether a particular claim is arbitrable." *Archer and White Sales, Inc. v. Henry Schein, Inc.*, 935 F.3d 274, 278 (5th Cir. 2019) (citations omitted).

"Challenges to the validity of arbitration agreements 'upon such grounds as exist at law or in equity for the revocation of any contract' can be divided into two types." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444, (2006). "One type challenges specifically the validity of the agreement to arbitrate." *Id.* "The other challenges the contract as a whole, either on a ground that directly affects the entire agreement (*e.g.*, the agreement was fraudulently induced), or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid." *Id.* "Guided by § 4 of the FAA," the Supreme Court has held that:

> [I]f the claim is fraud in the inducement of the arbitration clause itself – an issue which goes to the making of the agreement to arbitrate – the federal court may proceed to adjudicate it. But the statutory language does not permit the federal court to consider claims of fraud in the inducement of the contract generally.

*Id.* at 445 (quoting *Prima Paint Corp.* v. *Flood & Conklin Mfg. Co.,* 388 U.S. 395, 403–04 (1967)). Moreover, "as a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract. . . . [U]nless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance." *Id.* at 445–46.

A "delegation provision is an agreement to arbitrate threshold issues concerning the arbitration agreement." *Rent-A-Center, Inc. v. Jackson*, 561 U.S. 63, 68 (2010). As such, "parties can agree to arbitrate 'gateway' questions

of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Id.* at 68–69. "Accordingly, unless [Plaintiff] challenged the delegation provision specifically, [the Court] must treat it as valid under § 2, and must enforce it under §§ 3 and 4, leaving any challenge to the validity of the Agreement as a whole for the arbitrator." *Id.* at 72; *see also Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 65, 68 (2019) ("When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract. In those circumstances, a court possesses no power to decide the arbitrability issue. That is true even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless.").

"[P]arties may delegate threshold arbitrability questions to the arbitrator, so long as the parties' agreement does so by 'clear and unmistakable' evidence." *Henry Schein, Inc.*, 586 U.S. at 69 (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) and *Rent-A-Center, Inc.*, 561 U.S. at 69 n.1).

## III. Discussion

The Enova Defendants argue that all the requirements are met for compelling arbitration. Namely, there is a valid agreement to arbitrate

between the parties,[8] and the claims at issue regarding the Loan Contract, including the validity and enforcement of the agreement itself, fall within the scope of their arbitration agreement. (ECF No. 38 at 10–14). The Enova Defendants further argue that the action must be stayed pending arbitration under § 3 of the FAA. (*Id.* at 14). Alternatively, the Enova Defendants request that the action be transferred to the District Court for the District of Utah pursuant the contract's forum-selection clause. (*Id.* at 15).

In opposition, Plaintiff argues arbitration should be denied because he did not agree to arbitrate, there are contracting-party "identity" issues, the defendants' corporate structure and relationships are disputed, and the loan contract is void *ab initio* for being usurious and induced by fraud. Further, Plaintiff challenges the delegation clause, and claims that non-signatories cannot invoke the arbitration clause and defendants waived their right to arbitrate by filing separate litigation. (ECF No. 40 at 12–26). In reply, the Enova Defendants counter that Plaintiff admitted in his pleadings the existence of a valid agreement to arbitrate, all defendants are covered by the arbitration provision, the contract's validity is a question for the arbitrator,

[8] The Enova Defendants contend a valid contract to arbitrate exists under either Utah or Texas law. (ECF No. 38 at 11–12). The Court need not reach the choice-of-law issue; as discussed below, the contract's validity is for arbitration.

and separate lawsuits with different parties does not imply waiver of their right to arbitrate. (ECF No. 41 at 2–8).

Plaintiff's action boils down to claims for fraud and usury relating to his Loan Contract. Because these claims fall under the scope of the Arbitration Provision, they should be resolved in arbitration. The Court will nonetheless address the issues germane to the instant dispute.

**A. Claims Regarding the Loan Contract**

In his lengthy Complaint, Plaintiff raises a panoply of claims and allegations stemming from his Loan Contract due to Defendants' alleged usurious interest rate, unlawful fees, deceptive practices, fraudulent inducement, and illegal business structure. (*Id.* at 4–7, 11, 25, 29–88). Plaintiff also attaches the Loan Contract, where he signed as the Guarantor and on behalf of the Borrower. (ECF No. 1-1 at 18–19). The Loan Contract's Arbitration Provision, specifically provides that "all claims between borrower, guarantors, and lender shall be resolved through mandatory binding individual arbitration." (*Id.* at 12). According to the Provision, the term "Claims" is to be "given the broadest possible meaning, and include without limitation Claims arising from or relating to" the Loan Contract and its transactions, terms, and obligations. (*Id.* at 12–13). The Provision also covers claims "between Borrower and Guarantor and Lender or Lender's parent corporations, wholly or majority owned subsidiaries, affiliates, predecessors,

successors, assigns, agents, independent contractors, employees, officers, directors or representatives." (*Id.* at 13).

When considering a motion to compel arbitration, the court must determine "(1) whether a valid agreement to arbitrate exists between the parties, and (2) whether the dispute at issue falls within the scope of that agreement." *Grant*, 469 F. App'x at 314. "While ordinarily both steps are questions for the court, the parties can enter into an arbitration agreement that delegates to the arbitrator the power to decide whether a particular claim is arbitrable." *Archer and White Sales, Inc.* 935 F.3d at 278. Here, the question of whether a valid agreement to arbitrate exists between the parties—i.e., the gateway question—has been delegated to the arbitrator, because the Arbitration Provision expressly covers "Claims regarding the *validity, enforceability*, or scope of *this Arbitration section* or this Agreement, including but not limited to whether a given claim or dispute is subject to arbitration." (ECF No. 1-1 at 13) (emphasis added).

The Supreme Court has explained that "[c]hallenges to the validity of arbitration agreements 'upon such grounds as exist at law or in equity for the revocation of any contract' can be divided into two types." *Buckeye Check Cashing, Inc.*, 546 U.S. at 444. "One type challenges specifically the validity of the agreement to arbitrate." *Id.* "The other challenges *the contract as a whole*, either on a ground that directly affects the entire agreement (e.g., the

agreement was fraudulently induced), or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid." *Id.* (emphasis added). Plaintiff's action falls under the second type, challenging the contract as a whole, because his complaint is rife with allegations that the Loan Contract was fraudulently induced and that the contract's usurious provisions render it invalid. The Supreme Court's decisions in *Buckeye Check Cashing, Inc. v. Cardegna* and *Rent-A-Center, Inc. v. Jackson* are directly applicable to this case.

In *Buckeye Check Cashing*, the plaintiffs and Buckeye Check Cashing entered into a loan contract, which included a clause whereby Cardegna agreed to resolve any claims over the loan through arbitration. 546 U.S. at 442–43. The plaintiffs later sued Buckeye in Florida state court, alleging that Buckeye charged usurious interest rates and that the agreement violated various state lending and consumer-protection laws, rendering it illegal. 546 U.S. at 443. Buckeye moved to compel arbitration, and the trial court denied the motion, holding that the court should resolve a claim that a contract is illegal and void *ab initio*. *Id.* The state court of appeal reversed, holding the question of the contract's legality should instead go to the arbitrator, and the Florida Supreme Court reversed, ruling in favor of Plaintiff. *Id.*

When the case was before the Supreme Court, the Court explained that challenges to the validity of arbitration agreements can be divided into two

types—one challenging specifically "the validity of the agreement to arbitrate" and other challenging "the contract as a whole." *Id.* at 444. The Court concluded that plaintiffs' claim was of this second type, because, much like Plaintiff's case here, "[t]he crux of the complaint is that the contract as a whole (including its arbitration provision) is rendered invalid by the usurious finance charge." *Id.* Relying on precedent and § 4 of the FAA, the Court reiterated that "if the claim is fraud in the inducement of the arbitration clause itself—an issue which goes to the making of the agreement to arbitrate—the federal court may proceed to adjudicate it. But the statutory language does not permit the federal court to consider claims of fraud in the inducement of the contract generally." *Id.* at 445 (citing *Prima Paint Corp.*, 388 U.S. at 403–04).

Therefore, "unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance." *Id.* at 445–46. "[B]ecause [Plaintiff] challenge[s] the [Loan] Agreement . . . [t]he challenge should therefore be considered by an arbitrator, not a court." *Id.* at 446. *Rent-A-Center* further supports this conclusion. In *Rent-A-Center*, the Supreme Court held that, where an arbitration agreement includes a delegation provision that the arbitrator will determine the agreement's enforceability, and a party challenges specifically the enforceability of that particular delegation, the district court considers the challenge; however, if a party challenges the enforceability of the agreement

as a whole, the challenge is for the arbitrator. 561 U.S. at 67–72. The *Rent-A-Center* Court ultimately concluded the plaintiff "challenged only the validity of the contract as a whole" and he did not specifically challenge the delegation provision. *Id.* at 72–76.

"Accordingly, unless [Plaintiff] challenged the delegation provision specifically, [the Court] must treat it as valid under § 2, and must enforce it under §§ 3 and 4, leaving any challenge to the validity of the Agreement as a whole for the arbitrator." *Id.* at 72. The Court concludes that Plaintiff challenges the Loan Contract as a whole, and thus, the motion to compel arbitration should be granted.[9] *See Williams v. Cmty. Bank, Ellisville*, 821 F. App'x 292, 296 (5th Cir. 2020) ("As the Supreme Court has stated, parties challenging an arbitration agreement must direct their arguments at the arbitration agreement, not the validity of the contract as a whole. Here, the Williamses' allegations of fraud are all directed at the contract as a whole.").

[9] The non-signatories are also entitled to invoke arbitration because Plaintiff alleges that the corporate defendants and the individual defendants acted together to defraud Plaintiff and because such allegations are connected with the obligations of the parties' loan contract. *See Noble Capital Group, L.L.C. v. US Capital Partners, Inc.*, No. 20-50721, 2021 WL 3477481, at *3 (5th Cir. Aug. 6, 2021). Additionally, the Arbitration Provision explicitly covers claims involving the "Lender or Lender's parent corporations, wholly or majority owned subsidiaries, affiliates, predecessors, successors, assigns, agents, independent contractors, employees, officers, directors or representatives." (*Id.* at 13).

### B. Challenge to the Arbitration Agreement and Delegation Provision

Even if the Court were to assume Plaintiff has challenged the arbitration agreement and delegation provision, the Court would still conclude that his challenge fails.

When considering whether there was a valid delegation, "the court's analysis is limited." *Archer and White Sales, Inc.*, 935 F.3d at 279. The Court asks "if the parties entered into a valid agreement. If they did, [the Court] turn[s] to the delegation clause and ask[s] 'whether the purported delegation clause is in fact a delegation clause—that is, if it evinces an intent to have the arbitrator decide whether a given claim must be arbitrated.' *Id.* "When determining that intent, '[c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so.'" *Id.* (internal quotations omitted). "If there is a valid delegation, the court must grant the motion to compel." *Id.*

In response to the motion to compel, Plaintiff contends he did not knowingly assent to the arbitration agreement and he specifically challenges the delegation clause because "(1) it was contained in a contract with disputed counterparty identity; (2) it depended on false Utah recitals; (3) Plaintiff disputes that he knowingly agreed to delegate threshold questions to an arbitrator when the identity of the 'Lender' invoking delegation was concealed;

and (4) the unsigned portal contract confirms no valid agreement was formed."[10] (ECF No. 40 at 12, 20). Plaintiff's arguments, however, are belied by his pleadings. In reply, the Enova Defendants point out instances in Plaintiff's Complaint in which he states he entered into the Loan Contract and that he attached the signed version of the Contract he now denies signing. (ECF No. 41 at 2–3). Defendants' points are well taken. The Court will address each of Plaintiff's arguments.

To begin, the issue of the agreement's "validity" is different from the issue whether any agreement between the parties "was ever concluded." *Rent-A-Center*, 561 U.S. at 71 n.2. As the Supreme Court explained in *Buckeye Check Cashing*, and reaffirmed in *Rent-A-Center*:

> The issue of the contract's validity is different from the issue whether any agreement between the alleged obligor and obligee was ever concluded. Our opinion . . . addresses only the former, and does not speak to the issue decided in the cases . . . which hold that it is for courts to decide whether the alleged obligor ever signed the contract . . . whether the signor lacked authority to commit the alleged principal . . . and whether the signor lacked the mental capacity to assent.

*Buckeye Check Cashing, Inc.*, 546 U.S. at 444 n.1; *see also Rent-A-Center*, 561 U.S. at 71 n.2 (citing *Buckeye Check Cashing, Inc.*, 546 U.S. at 444 n.1); *cf. Allen v. Regions Bank*, 389 F. App'x 441, 444 (5th Cir. 2010) (explaining that

[10] In his response, Plaintiff has attached a version of his Loan Contract without the electronic signatures. (ECF No. 40-2 at 29–47).

"when the issue is whether an arbitration agreement even exists," such as by alleging "the contract with the arbitration provision never came into effect because all the necessary signatures were never acquired," the courts must decide; but finding that contraction formation was not an issue because the plaintiffs agreed there was a valid contract with the arbitration provision); *id.* at 446 ("This [new formation allegation] appears to be an attempt to claim this dispute fits within the category that the Supreme Court has said is for the courts, that the agreement was not 'concluded' because the contract was never signed, or the signatory did not have authority to bind or had insufficient mental capacity." (citing *Rent-A-Center*, 561 U.S. at 71 n.2 and *Buckeye Check Cashing, Inc.*, 546 U.S. at 444 n.1)). Plaintiff has repackaged his arguments *post hoc* based on issues of assent. The Court, however, finds that his arguments are meritless.

First, Plaintiff argues that he did not sign the contract containing the arbitration clause. (ECF No. 40 at 20). Yet, as Defendants point out, his Complaint is replete with factual allegations that he entered into the Loan Contract. (ECF No. 41 at 2–3). For instance:

- "Plaintiff personally executed and guaranteed the October 24, 2022 financing agreement in his individual capacity, thereby becoming personally obligated for all amounts due under the loan." (ECF No. 1 at 7, ¶ 21).

- "On October 24, 2022, Plaintiff entered into a loan agreement through the OnDeck online platform for a stated principal amount of approximately $150,000." (*Id.* at 24, ¶ 94).

- "Every substantive part of the transaction occurred in Texas: the loan was solicited, applied for, approved, *executed via electronic signature*, funded, and repaid while Plaintiff was in Texas." (*Id.* at 24, ¶ 97 (emphasis added)).

- "This cause of action concerns the October 24, 2022 financing agreement issued to Plaintiff through the OnDeck online platform . . . ." (*Id.* at 29, ¶ 118).

- "Plaintiff reasonably relied on the written agreement [for the 2022 loan], OnDeck branding, and Defendants' representations. . . . "Had Plaintiff known the true facts, he would not have entered into the 2022 loan." (*Id.* at 36, ¶¶ 139–140).

- Plaintiff "sought and acquired financial services and credit from Defendants." (*Id.* at 37, ¶ 144).

Nowhere in the Complaint does Plaintiff allege he did not sign the Loan Contract. Nor does he raise an allegation that the Loan Contract was procured without his signature, such as through forgery. Indeed, as mentioned, Plaintiff attached the Loan Contract which contains his signature, thereby assenting to the terms of the agreement, including the Arbitration Provision. (ECF No. 1-1 at 18–19). "It is a cardinal rule of contract law, recognized by the Supreme Court more than a century ago, that a party is bound by a contract to which he signified his assent and he cannot be heard to complain that he did not read its contents." *Marsh*, 103 F. Supp. 2d at 919 ("The [Plaintiffs'] original Cardmember agreement contained the arbitration clause. . . . Thus, [they]

cannot and do not contend that they were not aware of the arbitration provision contained in their Cardmember Agreement."); *see also Noble Capital Group, L.L.C., Inc.*, 2021 WL 3477481, at *2 ("[Plaintiff], however, argues that because it was not a signatory to any of the agreements containing arbitration provisions, it cannot be compelled to arbitrate. But in its complaint, [Plaintiff] claimed that Defendants fraudulently induced it to assent to the arbitration clauses. So [Plaintiff] cannot now claim that it never assented to the arbitration clauses.").

Second, Plaintiff challenges the delegation clause because it "depended on false Utah recitals." (ECF No. 40 at 20). However, this argument hinges on challenging the Loan Contract as a whole, because, according to Plaintiff, these recitals constitute fraud, thereby rendering the contract illegal. As examples, Plaintiff states in his Complaint:

- "The Utah venue clause in Plaintiff's 2022 agreement states only that disputes may be brought in Utah, making it permissive clause. Plaintiff alleges that the clause was procured through false recitals . . . and is therefore void and further evidence of Defendants' fraudulent scheme." (ECF No. 1 at 28, ¶ 116).

- "The Fraud Defendants made material false statements and omissions regarding the identity of the lender, the place of lending, the *governing law*, the nature of the transaction, and the enforceability of the loan." (ECF No. 1 at 32, ¶ 131).

- "The Fraud Defendants . . . falsely represented the loan as having been made in Utah. . . . These misrepresentations induced Plaintiff . . . to accept a Utah venue clause that Defendants knew was baseless." (*Id.* at 32, ¶ 132).

- "Texas courts refuse to enforce choice-of-law provisions that would circumvent Texas's fundamental public policy particularly its strong policy against usury. . . . The Utah venue clause was procured through false recitals . . . ." (*Id.* at 91, ¶¶ 360–361).

Plaintiff challenges the forum-selection and choice-of-law provisions, but he does not specifically challenge the Arbitration Provision, let alone the delegation clause. *See Marsh*, 103 F. Supp. 2d at 920 ("The arbitration provision standing alone does not present an opportunity for one party to gain an unfair advantage over the other in arbitration, any more than the inclusion of a forum selection clause would impede a just result in a court of law."); *Green Tree Servicing, L.L.C. v. House*, 890 F.3d 493, 504 (5th Cir. 2018) ("The [borrowers'] fraud allegations are not specific to the arbitration agreement. In their pleadings, the [borrowers] argued generally that the [lenders] 'wrongfully obtain[ed] the [borrowers'] signatures on contracts, promissory notes, deeds of trusts, insurance payment plans, and completion certificates' and that '[a]ll the signatures . . . on the aforementioned documents were generally procured under duress, with deceit, and/or through coercion, trickery, and/or other wrongful conduct.' These blanket allegations of fraud fall well short of the specificity that *Rent-A-Center* requires.").

Finally, Plaintiff's first and third arguments challenge the delegation clause based on alleged disputed identities of the contracting parties. (ECF No. 40 at 20). In short, Plaintiff argues he did not assent to arbitration because

he intended to contract with OnDeck, but the Loan Contract identifies ODK Capital as the Lender. Again, the Loan Contract and his Complaint tell a different story. Tellingly, the Loan Contract's first section states as follows:

> This Business Loan and Security Agreement . . . governs your business loan ("Loan") from ODK Capital, LLC. . . . In this Agreement . . . The words "**OnDeck**", "Lender", "we", "us"," and "our" **mean ODK Capital, LLC** or its successor(s) and assigns.

(ECF No. 1-1 at 5 (emphasis added)). In Plaintiff's Complaint, he does not allege that he asserted a complaint about the identity of the contracting parties after he received the Loan Contract. On the contrary, Plaintiff submits he paid off the loan in full, and Plaintiff does not allege he raised a lack-of-assent complaint based on misidentity during the twelve-month term of the contract. (ECF No. 1 at 25–26). *See generally Allen*, 389 F. App'x at 446 ("The [Plaintiffs] accepted this [arbitration] agreement by continuing to use their deposit accounts with [Defendant] and by signing signature cards. This was sufficient clarity to demand arbitration of arbitrability."). Moreover, "shortly after Plaintiff paid off the 2022 loan [in October 2023,]" Plaintiff admits he entered into second line of credit with Defendants in November 2023. (ECF No. 1 at 26). It begs the question why one would contract with party again if they had an issue with who exactly they were contracting with.

Additionally, in May 2025, a "Charge-Off Specialist" in connection with the November 2023 line of credit contacted Plaintiff requesting "tax returns,

financial statements, bank records, and other confidential information" to "evaluate a hardship review;" but rather than assert an identity-based complaint, "Plaintiff provided the requested information in good faith[.]" (*Id.* at 27–28). For these reasons, Plaintiff's arguments challenging the Arbitration Provision and delegation clause are unavailing.

"Any ambiguities regarding the scope of an arbitration clause are resolved in favor of coverage." *Allen*, 389 F. App'x at 446. The Arbitration Provision clearly and unmistakably evidences the parties delegated threshold arbitrability questions to the arbitrator. *Henry Schein, Inc.*, 586 U.S. at 69. The Court thus recommends the motion to compel arbitration be granted.

### C. Pending Motions for Judicial Notice and to Strike

Because the Court recommends that this action should be ordered to arbitration and stayed, the Court recommends the pending Motion for Judicial Notice (ECF No. 42), and Motion to Strike Plaintiff's Motion for Judicial Notice (ECF No. 43) be denied as moot. Even if the Court were to consider the arguments therein, they do not change the Court's conclusions.

## IV. Conclusion

Based on the foregoing, the Court **RECOMMENDS** Enova's Motion to Compel Arbitration and Stay Action, or Alternatively, to Transfer Venue (ECF No. 38) be **GRANTED**, Plaintiff's Motion for Judicial Notice (ECF No. 42) be **DENIED AS MOOT**, and Enova's Motion to Strike Plaintiff's Motion for

Judicial Notice (ECF No. 43) be **DENIED AS MOOT**. The Court **FURTHER RECOMMENDS** that this action be **ORDERED** to arbitration and **STAYED** pursuant to § 3 of the FAA.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

**SIGNED** in Houston, Texas on July 31, 2026.

Richard W. Bennett
United States Magistrate Judge